Lawrence Lessig, Stanford University For 186 years, America had an opt-in system of copyright, which meant that copyright was not granted automatically to all original works fixed in a tangible form, but instead was limited to works that were published, and not to all works that were published, but only those published with notice, and not all works published with notice, but only those published with notice, that were deposited and registered promptly. And for those marked, deposited, and registered, copyright did not grant a full term, but just an initial term that had to be renewed after 28 years. Under this system, at least 50 percent of published work entered the public domain immediately, and 93 percent of published work entered the public domain within 28 years. Beginning in 1976, Congress had shifted to an automatic, opt-out copyright regime. Under this regime, any original work fixed in a tangible form was granted an automatic copyright, whether or not registered, whether or not deposited, and whether or not marked with the copyright symbol, and not for an initial term that must be renewed, but for a term that extends now almost to a century. Under this system, zero percent of published work will enter the public domain for at least 100 years. Now, the consequence of this change and the focus of this case is a radical increase  in the number of unrefined works, works whose owner cannot even be identified. But while the opt-in system tailored copyright to its commercial purpose, narrowing protection to those works which could benefit from an exclusive right, the opt-out system has no such tailoring. It indiscriminately spreads its regulation of speech regardless of whether there's any continuing benefit for that copyright, and even whether the owner can be identified at all. Now, but for the Internet, Your Honors, and the related digital technologies, this change may well not have mattered at all. But because of the Internet and these digital technologies, it now has constitutional significance. For the indiscriminate regulation of this opt-out copyright system blocks an extraordinary range of creative and cultural speech unnecessarily. Libraries and archives who would use digital technologies to spread this, quote, out-of-print culture, people such as the plaintiffs before you today, cannot do this because of the burdens imposed because of this extraordinarily inefficient system regulating speech. Now, the question before this Court is whether this radical change in the scope and reach of copyright protection gets any First Amendment review at all. The government says it does not. Relying upon Eldred v. Ashcroft, the government argues that while changes in the, quote, traditional contours of copyright protection do merit First Amendment review, the only, quote, traditional contours, the government argues, are what the government calls, quote, traditional First Amendment safeguards, fair use in the idea-expression dichotomy. As the government argues, Eldred, quote, precludes First Amendment review of copyright laws unless Congress changes a traditional First Amendment safeguard, end quote, page 40 of their brief. Now, with all due respect to the government, that just cannot be the law. If Congress passed a statute that denied copyright protection to cartoons critical of the Prophet Muhammad, or if Congress denied copyright protection to all works by former government employees, there is no doubt that those laws would be subject to ordinary First Amendment review, even though they don't change a traditional. Ginsburg. Yes, but that those are subject matter. Now, one is content-based and one is targeting a particular person. But the point is the standard the government argues, articulates, says that there is no First Amendment review precludes First Amendment review unless there's a change in the traditional First Amendment safeguards. And there's no change in the traditional First Amendment safeguards in the way that I described it right here. So the point is, it can't be that these are the only two possible reasons to consider the First Amendment. And indeed, if you examine the language in the Eldred opinion itself, what the Court describes at page 221 of the opinion, the Court says, to the extent such assertions, I mean, the assertion someone has to make, as the Court said, other people's speeches, raise First Amendment concerns. Copyright's built-in free speech safeguards are generally adequate to address them. The D.C. Circuit, Judge Ginsburg in the D.C. Circuit, hotheld they were always adequate to address them. That's why he said copyright was categorically immune from First Amendment scrutiny. The very next sentence, the Supreme Court says, the D.C. Circuit went too far. It's not the case they are always adequate. They are just generally adequate. So that vagueness invites the Court to clarify, when aren't they adequate? And what the Court said was, when, as in this case, Congress has not altered the traditional contours of copyright protection, further First Amendment scrutiny is unnecessary. Inviting the Court and subsequent courts to examine the traditional contours of copyright protection, ask, have they changed? If they have changed, then First Amendment scrutiny is appropriate. If they haven't changed, then the traditional First Amendment safeguards are adequate. If the test were the First Amendment safeguards are always adequate, there would be no reason for the Supreme Court directly saying that the D.C. Circuit was incorrect, because the D.C. Circuit also pointed to these traditional First Amendment safeguards as constituting the sufficient ground for First Amendment interests. So the Court was opening up, or more precisely, the Court was limiting the exception to the ordinary rule, which is that the First Amendment protects against government regulations of speech by requiring the government to – I'm sorry. No, I just want – is your basic challenge here to the length of the copyright? Absolutely not, Your Honor. Because in Eldred, the question was the length of the copyright. The consequence of the victory in Eldred would have been that certain works had to pass into the public domain. The consequence in this case is not that works have to pass into the public domain, but that for these orphaned works, works where there's not even someone on the other side who's claiming the ownership and the desire to control it, there has to be some system to filter those so that that burden on the opportunity for people to speak does not interfere with what otherwise would be a perfectly legitimate use of this work. So this is a fundamentally different claim. In Eldred, the question was, did Mickey Mouse have to enter the public domain or not? And the Court's answer was no, Mickey Mouse doesn't have to enter the public domain. In this case, if we win, Mickey Mouse still doesn't have to enter the public domain. The Court – Congress can continue to protect works. It's just there's still a Disney. There's still a Disney. And because Disney certainly takes steps to protect their works in a way that clarifies the underlying rights such that people know who the owner of this property is. In the cases we're talking about, there is such absolute uncertainty about who the owners, who the rights are owned by, that there's no way for anybody even to know who to ask to clear the rights to make this work. Sotomayor, why isn't that within Congress's prerogative to decide that where there may be some uncertainty, that that we're going to essentially extend the copyright? Well, it is within Congress's prerogative subject to the constraints of the First Amendment. So to the extent Eldred does not exempt this change from First Amendment review, and we submit it doesn't because this is a change in a traditional contour of copyright, the question is whether Congress can survive, we would suggest, intermediate scrutiny in analyzing this law. So we can see there's an important governmental interest to make it easy for copyright owners to secure their rights. But the second half of the question is, has the government burdened substantially more speech than necessary to advance that important governmental interest? And that half of the equation, Congress simply did not consider in the context of current technologies that make it possible for an extraordinary range of people to now cultivate and preserve and make accessible our culture. And that's exactly what the plaintiffs in this case do. For free, they take culture that otherwise would be either lost because not preserved or invisible because in stacks and libraries not accessible, and they want to make it accessible. They don't want to make Disney's work accessible. They don't want to make work accessible of anybody who's trying to exercise their rights. Excuse me. Ginsburg. Well, okay. So Congress was concerned at the end of the day, Congress was concerned about making sure that in those cases where someone is there but doesn't take act, doesn't act in time, that they don't have to act in time. But you're concerned about a narrow class of cases where it's not certain that there's anybody even there who would act ever. How would you write the statute? Well, first of all, I'd suggest it's not a narrow class of cases. The Copyright Office has recently conducted a proceeding on orphan works, conducted after the briefs in this case were filed, and they concluded this is a substantial class. Oh, it's a narrower class. A narrower class, perhaps, yes. And they've concluded this is a substantial problem that needs, as they say, legislative response. And we believe there are any number of legislative responses that could address this. For example, Congresswoman Lofgren has proposed a bill that would require 50 years after someone published a work that they simply send in a dollar and record the copyright. So at least we know who the authors are. That might be enough. The Copyright Office itself has proposals for how to deal with the orphan works problem. But the point is, these proposals need to be, and any eventual law, need to be evaluated under ordinary First Amendment analysis, which would ask whether they balance the interest of advancing the government's purpose without burdening more speech than is necessary. And right now, that balance has not been engaged in. Well, but the Constitution gives the copyright – gives Congress the authority to deal with copyrights. That's right. Like any authority, subject to the First Amendment. Yes. So if Congress passes a law pursuant to the copyright power that sweeps more broadly than it necessarily would have to in order to achieve what Congress wanted to achieve, how is that – how does that become a violation of the First Amendment? Well, in any case, the only way Congress can violate the First Amendment is to pass a law that sweeps more broadly with respect to speech than the First Amendment allows. And in this case, what Eldred says is – Well, okay. With respect to speech – Right. Would you be – would you just be clearer on what you mean? Well, of course. The speech issues at stake here are primarily the speech interest that one has the right – what this Court has called the right to receive information. So, for example, the right for people to have access to and use the culture that they've inherited, that's the feature of this. And in this Court, for example, in the Crofton v. Roe case, where you consider the right of prisoners to receive publications, it was fundamentally grounded on a right to receive information. But every copyright statute impedes the right of speech to some extent. Absolutely. So what the Supreme Court said in Eldred was, where you have 200 years of history, where it's the traditional contours of copyright, don't come to us and raise a First Amendment claim now. Justice Ginsburg was channeling Justice Scalia. It's tradition. Tradition justifies it. There's no First Amendment claim. But if tradition doesn't justify it, because this is an innovation, something radically new, then you must pass that regulation of Congress through ordinary First Amendment review. If you didn't do that, then you would have a loophole in First Amendment protection. So the Court's saying, we will trust 200 years of history, but if it's a change from history, which this clearly is, then you must have the opportunity to weigh that change under ordinary First Amendment analysis. Now, this change that we've pointed to is perhaps the most fundamental change in the history of American copyright law. The architecture of this opt-in system was the fundamental character for most of the history of American copyright law. And that change, beginning in 1976, is the innovation that we say needs to be tested by the First Amendment. Now, it may pass the First Amendment test, of course. We're not saying Congress can't innovate. But the point is, the immunity which Eldred grants Congress under the Copyright Clause because of a pedigree of history obviously can't extend into context where there is no such pedigree of history. It needs to be evaluated in the same way that any first statute-regulating speech would be evaluated. If I may, I'd like to reserve the balance of my time for a moment. May I please report, I'm John Tickell with the public staff of the U.S. Department of Justice. And I'm representing the appellee, Attorney General Gonzalez, on this appeal. I really, at the outset, I have very little to add to our brief and to the colloquy between the Court and opposing counsel, which demonstrates that this case is squarely controlled by Eldred. The Eldred decision was a landmark decision that rejected these arguments in sweeping fashion. And it did so with respect to both the Copyright Clause argument, which the plaintiff really has not even, did not even discuss this morning, but which is fully addressed in the briefs. That is the effectively perpetual argument that was raised by Justice Breyer in dissent and rejected by the majority in Eldred. And then the First Amendment argument. And with respect to the latter argument, the plaintiff is now further paring back the onion, peeling the layers of the onion back further to focus solely on what it characterizes as orphan copyrights or matters that are raised by current technologies. But that is a policy matter that it has no constitutional significance. Labels in no way undermine the applicability of Eldred to this case. So you're saying that there's no legal distinction between this case and the challenge to the length of the copyright? That's correct, Your Honor. Effectively, that is what this is. We're really talking once again about extensions of congressional judgment regarding the length of the copyright terms and extensions of copyright terms. So the, with respect to the language, the crucial language that the plaintiff relies on in Eldred, the traditional contours of copyright protection, read in context, it is clear that the Supreme Court was indeed referring to both the idea-expression dichotomy and the fair use doctrine as the traditional First Amendment safeguards. And unless Congress changes those, as a general rule, First Amendment considerations do not come into play because the Supreme Court recognized that copyright itself is designed to be an engine of free speech and to promote free speech values, and that there's less constitutional significance to the freedom to make other people's speeches than to make one's own. And the, when Congress, when the Supreme Court used the phrase traditional contours of copyright protection, it really was using that as shorthand for saying traditional copyright, traditional contours of copyright protection of First Amendment values. And that is taken care of by the fair use doctrine and the idea-expression dichotomy. So, again, in our view, this is really Eldred revisited, and I'm prepared to answer any questions. Is there anything in the legislative history that indicates that Congress was aware that in changing the system that there might be some copyrights where there's nobody there anymore who really enjoys the copyright right? I'm not aware of any discussion that specifically focuses on that point. But certainly the ---- I suppose it's a fair inference that they might have thought about it. Excuse me, Your Honor? I mean, I guess it's a kind of a fair inference that that would happen. That's right, Your Honor. Certainly the more general generally subsumes the more specific, and that would be a more specific concern. Obviously, there will be works that are, where it's difficult to locate the copyright holder or it's not clear that the copyright holder has any interest in pursuing it, but Congress was legislating generally as is well within its authority under the Copyright Clause as Eldred holds. And when it does so, that does not raise any First Amendment concerns. What interest opposed the copyright extension? The ---- I believe the interest, similar to those present here, the plaintiffs in this case and, of course, the plaintiffs in Eldred itself and the various other cases that either have been decided or are pending, the Lux Music case, which was decided by the D.C. Circuit, and these statutes were upheld, and Golan case, which was decided in favor of the government in the District Court of Colorado, and which is now pending on appeal. And the plaintiff raises a concern about viewpoint or content discriminatory statutes, but that really does not come into play because Eldred itself was written and it states, it quotes the petitioners in that case as acknowledging that that was a content neutral statute. So the Supreme Court really was referring to, it was referring to content or viewpoint neutral statutes when it said that First Amendment concerns generally do not come into play. Obviously, if Congress were to enact a viewpoint discriminatory or content discriminatory statute, that would be a very different inquiry. So, but that is not at issue here. So, in our view, the District Court correctly held that this case is controlled by Eldred. Its decision and the Supreme Court's decision in Eldred were not based on intuition as the plaintiff's state, and the District Court's decision should be affirmed. And if there are no further questions, I thank the Court. Are there any further questions? Good. All right. Thank you, counsel. The first question this Court's got to resolve is whether the two First Amendment safeguards exhaust First Amendment review of a copyright statute. Four times in the government's brief, it asserts those are the only two grounds that could possibly be raised in challenging a copyright statute. Two times, the government says, well, generally or largely, those are the grounds. Well, if they're not the only two grounds, then the question is, what beyond those two grounds gives a plaintiff the right to challenge a copyright statute? Now, we suggest the answer to that comes from the words of the opinion, Eldred v. Ashcroft, where the Court talks about traditional contours of copyright. The government says that this is exactly the same case that was raised and argued in Eldred. This case has nothing to do with the arguments raised in Eldred. In Eldred, the Supreme Court said that the practice, the historical contour, the traditional contour of how Congress dealt with term extension, was always to extend existing terms as well as prospective terms. That practice, that history, is what earned Congress the presumption that that practice satisfies the Constitution. So then the question is, if that practice satisfied the Constitution, what grounds could you have for challenging a copyright statute? If this Court holds, as the government four times in their brief asserts, that the only grounds could be changes in the traditional First Amendment safeguards, this Court will simply be repeating what the D.C. Circuit said in Eldred. The D.C. Circuit pointed to those two safeguards, and then they said copyrights are categorically immune from First Amendment scrutiny beyond those first two safeguards. And that simply was explicitly rejected by the Supreme Court in Eldred. Now, the district court here also rejected the government's argument that the only two grounds that you can challenge a copyright statute are changes in the, quote, traditional First Amendment safeguards. But the district court said that what the court means by traditional contours of copyright protection is the traditional contours of the scope of copyright protection. And we submit that narrowing to scope is plainly inconsistent with the text in the  So the district court said that eight times the Eldred opinion speaks about copyright protection, each time the Court indicates not just copyright scope but other aspects of copyright protection that they're referring to. Okay. You were counsel in Eldred. That's right. In just one sentence, the constitutional distinction between this case and Eldred is? Is specified in Eldred itself, where the Court says that changes in traditional contours of copyright entitle us to How does this change traditional contours of copyright, other than blank? Well, this changes traditional contours of copyright because of the difference between a system which is an opt-in system and an opt-out system. Those are the contours of copyright. Those are the most fundamental aspects of copyrights design. Because, again, if the difference between the system is one system produces 93 percent of works in the public domain in 28 years and another system produces zero percent of works in the public domain in 100 years, what could be more fundamental than that difference? So if we talk about contours and an ordinary meaning of that term and tradition as referring to a practice that had 186-year pedigree, these are traditional contours of copyright. They have been changed here. And our only claim is that the sensible rule the Court articulates in Eldred, which is we will give a First Amendment pass where there is a practice, a 200-year practice to justify it, doesn't apply here because there's no 200-year practice to justify this new system of an opt-out copyright. So Eldred says there's no special First Amendment test so long as there's a tradition supporting what Congress did, and in that case there was a tradition. And so Eldred says no First Amendment analysis beyond that tradition. Here, there is no tradition. And Eldred explicitly says traditional contours of copyright have not changed. The government concedes when traditional contours of copyright do change, there's a First Amendment review. The only dispute is what the scope of traditional contours of copyright are. The government, reading the Court of Appeals in Eldred, says the only two traditional contours are traditional First Amendment safeguards. Well, that can't be what the Court meant. Ginsburg. But aren't you really, really basically arguing that any time you change from what happened, any time you change the law, even if you were to extend the period for two years, it would be a change in the tradition, and therefore, you review it, and therefore it has to go out? No. That wouldn't be the case at all. In fact, again, look at Eldred. In Eldred, the Court was viewing the Sonny Bono Copyright Term Extension Act. That statute changed the term of copyright by 20 years for existing and prospective works. What the Court said is that the practice, the historical practice, was always to prospectively and retrospectively change copyright. So there's no change in the traditional contour there, even though the particulars of the law had been changed, of course. But the point is the practice of extending prospectively and retrospectively was consistent. And they say that practice, therefore, justifies what the Court, what Congress has done here because of tradition. But where it's not tradition, then you would create a First Amendment loophole if Congress just gets to call it copyright and regulate however they want and have no opportunity to test it under ordinary First Amendment analysis. And that's all we're having here. In this case, we had no opportunity, Your Honor, to introduce any evidence below about the significance of these changes. And that's all we're asking for here. Your time has expired. Thank you, Your Honor. The case just argued is submitted for decision.
judges: Schroeder, Farris, Rawlinson